UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES JOHNSON,

    Plaintiff,

-v-

NYS OFFICE OF ALCOHOLISM AND
SUBSTANCE ABUSE SERVICES,
MARIA PASCERI, *and*
COMMISSIONER SANCHEZ,

    Defendants.

No. 16-cv-9769 (RJS)
OPINION AND ORDER



RICHARD J. SULLIVAN, District Judge:

Plaintiff James Johnson, proceeding *pro se*, brings this employment-discrimination action against the New York State Office of Alcoholism and Substance Abuse Services ("OASAS") and individual Defendants Maria Pasceri and Commissioner Arlene Gonzales-Sanchez, alleging violations of his rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12112-12117 ("ADA"); the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*; 42 U.S.C. § 1983; and 42 U.S.C. § 1985. Now before the Court is Defendants' motion to dismiss Johnson's Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, Defendants' motion is granted.

I. BACKGROUND

A. Facts[1]

Johnson, who describes himself as a recovering alcoholic, was at all times relevant to this lawsuit

---

[1] The following facts are drawn from the Amended Complaint, filed on May 10, 2017 (Doc. No. 14 ("Amended Complaint" or "Am. Compl.")). In ruling on Defendants' motion, the Court has also considered Defendants' memorandum of law (Doc. No. 18 ("Mem.")), Plaintiff's opposition (Doc. No. 22 ("Opp'n")), and Defendants' reply (Doc. No. 28 ("Reply")).

an employee of the New York State Office of Alcoholism and Substance Abuse Services, for which he works[2] as a part-time Addictions Counselor Assistant at the Creedmoor Addiction Treatment Center. (Am. Compl. at 1–5.)[3] At unspecified times during his employment, Johnson has "been instructed" to restrict his clients' phone calls, confiscate their personal belongings, and send away visitors, in violation of what Johnson believes are the clients' rights. (Id. at 3–4.) As a result, Johnson "questioned" his supervisors' instructions, submitted complaints to the New York State Justice Center and the Equal Opportunity Employment Commision, and filed a federal lawsuit. (Id.)

Johnson alleges that starting in February 2016 he was subjected to a variety of adverse actions in retaliation for his complaints, on the basis of his status as a recovering alcoholic, or both. For example, Johnson alleges that on an unspecified date in 2016, he was "ridiculed by an intern" when he informed her that he "wasn't allowed to drive the van" – perhaps because of his alleged alcoholism, though the complaint is silent as to the actual reason. (Id. at 2.) Also in 2016, Johnson was "told that [he] was not allowed to run groups," and "a full-time [Addictions Counselor Assistant] position was given to a less senior [Addictions Counselor Assistant]." (Id. at 2–3.) Johnson asserts that he has also been "given the jobs that nobody wants to do (Lunch Duty) on a weekly basis." (Id. at 2.) Johnson further contends that Defendants failed to promote him to a "Nurse Administrator" position, even though he "scored a 90 on the State Exam"; instead, Defendants have given Nurse Administrator positions to "less qualified applicants." (Id.) On one occasion, Johnson applied for, but did not receive, a transfer to an open position at a Staten Island treatment facility, even though Johnson believes he "was more qualified th[a]n the person [who] was given this position[.]" (Id.) Johnson also alleges that he has been unable to obtain positions in "other [New York State] agencies" for which he believes he is qualified. (Id.)

---

[2] Although evidence submitted in connection with Johnson's October 19, 2017 motion for a preliminary injunction (Doc. No. 33) indicates that Johnson has since been terminated, for the purposes of this motion to dismiss the Court relies on the facts as alleged in the Amended Complaint, which has not been amended to reflect Johnson's apparent change in employment status.

[3] Citations to the Amended Complaint refer to page numbers because the complaint lacks numbered paragraphs.

In February 2017, the OASAS Human Resources Director "barred [Johnson] from OASAS facilities (except Creedmoor), for assisting in the service of [his] federal complaint." (*Id.* at 3.) A month later, Johnson received an unsatisfactory employment evaluation that stated, falsely, that he "is not accepting of supervisory direction." (*Id.* at 4.) Finally, in April 2017, Defendants denied Johnson's request for a shift change. (*Id.* at 2.) Johnson also alleges that "Commissioner [Gonzales-Sanchez] and her new management team ha[ve] shown a pattern of discriminatory actions against people in recovery" because they have "removed almost all the Addiction Treatment Center Directors (that were in recovery) and replaced them with cronies and non-recovering individuals." (*Id.* at 3–4.)

B. Procedural History

Johnson filed his initial complaint in this action on December 19, 2016. (Doc. No. 1.) On April 3, 2017, Defendants filed a pre-motion letter requesting a pre-motion conference in anticipation of their contemplated motion to dismiss. (Doc. No. 8.) At the conference, the Court explained to Johnson that in order to state a claim in federal court, one must "allege facts that would support an inference of the various elements of the cause of action." The Court advised Johnson that his complaint was "a little barebones by federal standards" and that "as written" it would probably be dismissed for failure to state a claim, but suggested that "the remedy" would be for the Court to "give [Johnson] time to amend [his] complaint to add more facts." For example, the Court highlighted the conclusory nature of Johnson's retaliation claim and advised him that he would need to include more allegations about what happened when and why. Johnson requested two weeks to amend his complaint. The Court granted that request and encouraged Johnson to focus on specific instances of illegal conduct, rather than on generic employment grievances. After the pre-motion conference, on May 10, 2017, Johnson filed the Amended Complaint. Now before the Court is Defendants' motion to dismiss, which was filed on June 2, 2017 and fully briefed on June 23, 2017. (Doc. Nos. 17, 25.)

3

## II. SOVEREIGN IMMUNITY

On a Rule 12(b)(1) motion to dismiss, the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Defendants argue that Johnson's ADA, § 1983, and § 1985 claims against OASAS are barred by the doctrine of sovereign immunity. Although the Amended Complaint does not specify under which title(s) of the ADA Johnson is suing, the Court construes his ADA claims as arising under Title I because they allege discrimination with respect to terms, conditions, and privileges of employment, *see* 42 U.S.C. § 12112(a), and Title V because they allege retaliation, *see* 42 U.S.C. § 12203(a). "The Supreme Court has held that Title I of the ADA is not a valid abrogation of the States' sovereign immunity and thus the Eleventh Amendment bars claims brought under Title I against states or state agencies." *Henny v. N.Y. State Office of Mental Health*, 842 F. Supp. 2d 530, 544 (S.D.N.Y. 2012) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368–74 (2001)); *see also Morales v. New York*, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014) (same for Title V). It is likewise "now settled that a state cannot be sued under § 1983" and that "this rule applies to States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes," such as state agencies. *Komlosi v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995) (§ 1983). The same is true for suits under 42 U.S.C. § 1985. *Finkelman v. N.Y. State Police*, No. 06-cv-8705 (JSR), 2007 WL 4145456, at *3 (S.D.N.Y. Nov. 15, 2007).

Here, there can be no dispute that OASAS is a New York State agency and therefore an arm of the State for Eleventh Amendment purposes. *See McNeil v. New York State Office of Substance Alcoholism & Substance Abuse Servs.*, No. 14-cv-2379 (NGG) (CLP), 2017 WL 1194655, at *4

(E.D.N.Y. Mar. 31, 2017). And New York has not waived its immunity or consented to being sued under the ADA, § 1983, or § 1985. *Nicolae v. Office of Vocational & Educ. Servs. for Individuals with Disabilities*, 257 F. App'x 455, 457 (2d Cir. 2007) (ADA); *Finkelman*, 2007 WL 4145456 at *3 (§§ 1983 and 1985). Accordingly, those claims must be dismissed as to OASAS for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[4]

### III. Failure to State a Claim

As to the remaining claims, Defendants argue that the Amended Complaint fails to adequately allege the substantive elements of any potential claim that it could be construed as raising. To withstand a motion to dismiss under Rule 12(b)(6), a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

---

[4] Defendants do not seek to dismiss Johnson's Rehabilitation Act claims against OASAS on sovereign immunity grounds. Because New York has waived sovereign immunity with respect to the Rehabilitation Act, those claims will be resolved below. *See Keitt v. New York City*, 882 F. Supp. 2d 412, 425 (S.D.N.Y. 2011).

5

Where a plaintiff proceeds *pro se*, a court must liberally construe the complaint and interpret it to raise the strongest arguments that it suggests. *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). "The policy of liberally construing pro se submissions" arises out of the understanding that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id*. "[D]ismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)). The Court will address each set of Johnson's claims in turn.

1. Disability Discrimination

Johnson alleges that Defendants discriminated against him on the basis of a disability – namely, his alcoholism. This set of claims can be construed as arising under three statutes cited in the Amended Complaint: the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983. The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a). To state a prima facie claim of disability discrimination under the ADA, a plaintiff must plausibly allege (1) that he is a member of a protected class (i.e., that he is disabled), (2) that he was qualified for the position or benefit denied, (3) that he suffered an adverse employment action, and (4) facts providing at least minimal support for the proposition that the employer was motivated by discriminatory intent. *Dawson v. New York City Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015) (citing *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir. 2015)). The same standard applies to disability discrimination claims under the Rehabilitation Act. *Forman v. City of New York*, No. 14-cv-6282 (LTS), 2017 WL 1167334, at *4 (S.D.N.Y. Mar. 27, 2017). However, "the law in this Circuit is clear that '[a] § 1983 action may not . . . be brought to

vindicate rights conferred only by a statute that contains its own structure for private enforcement.'" *Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014) (quoting *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)). Because the ADA contains its own structure for private enforcement, and Johnson's § 1983 claim is merely duplicative of his ADA claim, the § 1983 claim must be dismissed. *See Karatzas v. Herricks Union Free Sch. Dist.*, No. 15-cv-2888 (ADS) (AKT), 2017 WL 3084409, at *24 (E.D.N.Y. July 18, 2017) (collecting cases).

Johnson also fails to state a claim under the ADA and the Rehabilitation Act because, even assuming that the Amended Complaint satisfies the second, third, and fourth elements of a prima facie case, it fails to adequately allege that he is disabled or that he is regarded as such by his employer. To state a claim under the federal anti-discrimination statutes, a plaintiff must allege a "physical or mental impairment that substantially limits one or more of [an] individual's major life activities," a "record of such an impairment," or that he is "regarded as having such an impairment" by his employer. *McManamon v. Shinseki*, No. 11-cv-7610 (PAE), 2013 WL 3466863, at *9 (S.D.N.Y. July 10, 2013) (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 (2d Cir. 2002)). Johnson does not allege any facts indicating that his supervisors at OASAS regarded him as having a disability or even that they were aware of his alleged alcoholism. Nor does he allege that he has a record of a substantially limiting impairment. Rather, he appears to assume that he is disabled within the meaning of federal law because he identifies as a "recovering alcoholic." (Am. Compl. 4.) Although alcoholism is considered an "impairment" under the ADA and the Rehabilitation Act, "more than a physical or mental impairment is required" to satisfy the definition of "disability." *Id.* Because "[m]ere status as an alcohol or substance abuser does not necessarily imply a 'limitation' under the" anti-discrimination statutes, a plaintiff who alleges that he is disabled "must demonstrate not only that he . . . was actually addicted to drugs or alcohol in the past, but also that this addiction substantially limits one or more of his . . . major life activities." *Id.* (quoting *City of Middletown*, 294 F.3d at 47). Where, as

7

here, the complaint "has not alleged that [plaintiff's] status as a recovering alcoholic substantially limits one of his major life activities," it "has not plausibly pled a disability under the Rehabilitation Act." *Id.* at \*9-10; *see also Kelly v. N. Shore-Long Island Health Sys.*, No. 13-cv-1284 (JS) (WDW), 2014 WL 2863020, at \*7 (E.D.N.Y. June 22, 2014) (same for ADA). Accordingly, Johnson's disability discrimination claims are dismissed.

2. Retaliation

Johnson also alleges that Defendants retaliated against him in response to his complaints about OASAS policies regarding client property, visits, and phone calls. The Court construes this claim as arising under the ADA and the Rehabilitation Act. Title V of the ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The Second Circuit has held that retaliation claims under the Rehabilitation Act are analyzed using the same framework as under the ADA, which is the same one used under Title VII. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002); *Gentleman v. State Univ. of New York-Stony Brook*, No. 16-cv-2012 (ADS) (AKT), 2017 WL 2468963, at \*5 (E.D.N.Y. June 6, 2017). Thus, to state a claim for retaliation, Johnson must plausibly allege that: (1) Defendants took an adverse employment action against him, (2) because he opposed an employment practice made unlawful by the ADA or Rehabilitation Act. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citation and internal quotation marks omitted); *Garcia v. Kings Cty. Hosp. Ctr.*, No. 16-cv-3151 (ER), 2018 WL 389212, at \*6 (S.D.N.Y. Jan. 11, 2018) (applying framework to ADA retaliation claim).

Again, even assuming that one or more of Defendants' alleged acts rise to the level of an adverse employment action, the Amended Complaint does not plausibly allege that Johnson suffered any such action "because" of his opposition to any unlawful employment practice. To satisfy that standard, the

complaint "must allege facts leading to the plausible inference that retaliation was a 'but-for' cause of the employer's adverse action." *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 (S.D.N.Y. 2017) (citing *Vega*, 801 F.3d at 90). The complaint can raise such an inference by alleging either direct evidence of retaliatory animus, such as statements from supervisors, or indirect evidence, such as a "very close" temporal link between the protected activity and the adverse action. *Giles v. NBC Universal, Inc.*, No. 10-cv-7461 (DAB), 2011 WL 4376469, at *4 (S.D.N.Y. Sept. 20, 2011). Although there is no bright-line rule for what amount of time makes a link "very close," courts in the Second Circuit generally hold that "the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007); *see also McManamon*, 2013 WL 3466863, at *12 (finding temporal gap of three-and-a-half months insufficient at motion-to-dismiss stage); *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 299 (S.D.N.Y. 2014) (same); *McDowell v. N. Shore–Long Island Jewish Health Sys.*, 788 F. Supp. 2d 78, 82 (E.D.N.Y. 2011) ("[P]ursuant to the Second Circuit's authority, the Court finds that [a] greater than three month gap, unsupported by any other allegations showing plausible retaliation, is insufficient to raise an inference of retaliation [and thereby defeat a Rule 12(b)(6) motion to dismiss]"); *Caskey v. Cty. of Ontario*, 800 F. Supp. 2d 468, 472 (W.D.N.Y. 2011) (finding nine-month gap "patently insufficient" to survive motion to dismiss).

Here, Johnson merely asserts in conclusory fashion that Defendants took various adverse actions "[in] response" to his complaints about purported violations of his clients' rights (Doc. No. 14 at 4.) Although the federal lawsuit to which Johnson refers appears to have been filed on April 22, 2015,[5] the Amended Complaint alleges that the adverse employment actions began in February 2016, more than nine months later – a temporal gap that is too remote, by itself, to raise an inference of but-for causation.

---

[5] *See Johnson v. New York State Office of Alcoholism and Substance Abuse Services, et al.*, No. 15-cv-3166 (CM) (S.D.N.Y. April 22, 2015).

9

*See, e.g., Nadel*, 57 F. Supp. 3d at 299; *McDowell*, 788 F. Supp. 2d at 82; *Caskey*, 800 F. Supp. 2d at 472. And Johnson does not allege any other direct or indirect evidence from which a causal connection can plausibly be inferred. Thus, Johnson fails to state a claim for retaliation.

### 3. Failure to Accommodate

Johnson next alleges that Defendants denied his request for a shift change, and thereby "fail[ed] to accommodate" his purported disability, in violation of the ADA or the Rehabilitation Act. To state a claim for failure to accommodate, a plaintiff must allege that: "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of N.Y.*, 711 F.3d 120, 125–26 (2d Cir. 2013); *see also Forman*, 2017 WL 1167334, at *4 (noting that the same analysis applies to failure-to-accommodate claims brought under the Rehabilitation Act).

Here, as discussed above, Johnson has not alleged a disability within the meaning of federal anti-discrimination law. Nor does the Amended Complaint explain whether Defendants had notice of Johnson's purported disability, why he was unable to perform his job on his current shift, or why he would have been able to do so on a different shift. Accordingly, Johnson's failure-to-accommodate claim must also be dismissed.

### 4. Hostile Work Environment

Johnson further alleges that Defendants have "created a hostile work environment in many ways," such as by giving him negative evaluations, instructing him to confiscate clients' property, and denying them visitation rights. (Doc. No. 14 at 3.) The Second Circuit has "expressly noted that it has not yet addressed whether the ADA provides a basis for a hostile work environment claim." *Johnson v. City of New York*, No. 10-cv-6294 (RJS), 2012 WL 1076008, at *6 (S.D.N.Y. Mar. 28, 2012) (citing *Farina v. Branford Bd. of Educ.*, No. 10-cv-4347, 2011 WL 5607603, at *3 (2d Cir. Nov. 18, 2011)).

But even assuming *arguendo* that the ADA allows for such a claim, a plaintiff asserting a hostile work environment claim must still allege conduct that "(1) is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because the plaintiff is a member of a protected class." *Spence v. Bukofzer*, No. 15-cv-6167 (ER), 2017 WL 1194478, at *7 (S.D.N.Y. Mar. 30, 2017) (citations and internal quotation marks omitted); *see also Forgione v. City of New York*, No. 11-cv-5248, 2012 WL 4049832, at *7 n. 6 (E.D.N.Y. Sept. 13, 2012) (noting that "[c]ourts [that] recognize hostile work environment claims under the ADA apply the same standard utilized in Title VII cases"). A workplace "can be regarded as hostile if it is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Here, Johnson's purported examples of hostility or abuse clearly fall short of that standard. Although the Amended Complaint mentions that Johnson was once "ridiculed by an intern when [he] informed her [he] wasn't allowed to drive the van" (Doc. No. 14 at 2), it is well-settled that such "offhand comments, or isolated incidents of offensive conduct," even if they could somehow be imputed to Defendants, do not establish a hostile work environment. *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004). Moreover, "it is axiomatic that Plaintiff must establish that the hostile conduct occurred on account of his disability to make out a disability-based hostile work environment claim." *Johnson*, 2012 WL 1076008, at *6. Here, the Amended Complaint is entirely devoid of facts suggesting that Johnson's negative employment evaluations, the intern's comments about the van, his employer's purported instructions regarding clients, or any other putative adverse action had anything to do with his alleged disability. Accordingly, Johnson fails to state a claim for a hostile work environment.

### 5. 42 U.S.C. § 1985

The Amended Complaint asserts, without elaboration, that Defendants have violated 42 U.S.C. § 1985. To state a claim under § 1985, a plaintiff must allege "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). To demonstrate the existence of a conspiracy, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir.2003) (quoting *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000)).

Here, Johnson makes a conclusory reference to a "conspiracy" among Defendants and other "unnamed co-conspirators" to violate his rights, but alleges no facts whatsoever that support the existence of such a conspiracy. (*See* Doc. No. 14 at 4.) This "bare allegation of a conspiracy, without any factual support, is insufficient to survive a motion to dismiss." *Thomas-Ateba v. SAMHSA of U.S. Gov't*, No. 13-cv-4662 (ARR), 2014 WL 1414577, at *4 (E.D.N.Y. Apr. 10, 2014) (citing *Webb*, 340 F.3d at 110). Accordingly, Johnson's § 1985 claim also fails.

### IV. CONCLUSION

Put simply, the Amended Complaint is a laundry list of workplace grievances that lack a sufficient link to Johnson's alleged disability, which is itself inadequately pleaded. As the Court endeavored to explain at the pre-motion conference on April 27, 2017, more is required even at this stage of the proceedings, and conclusory assertions of discrimination and retaliation are not enough. Therefore, for the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is GRANTED.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 17, to mail a copy of this order to Johnson, and to close this case.

SO ORDERED.

Dated:     March 13, 2018
              New York, New York

_____
RICHARD J. SULLIVAN
United States District Judge